UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| ALBERT B. BREWER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:10-CV-71 |
| ) | (VARLAN/GUYTON) |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of the Plaintiff's Motion for Summary Judgment [Doc. 12] and the Defendant's Motion for Summary Judgment [Doc. 14]. The Plaintiff Albert B. Brewer ("Plaintiff") seeks judicial review of the decision by Administrative Law Judge ("ALJ") Joan A. Lawrence to deny him benefits, which was the final decision of the Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On October 18, 2006, the Plaintiff filed an application for supplemental security income ("SSI") and an application for disability insurance benefits ("DIB"). [Tr. 10]. On the application, the Plaintiff alleged a period of disability which began on August 15, 2006. [Tr. 10]. On March 9, 2009, ALJ Lawrence held a hearing, and issued a decision finding the Plaintiff "not disabled." [Tr.

1

22-39; 18]. On December 30, 2009, the Appeals Council denied the Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner. [Tr. 1-3]. The Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g).

## I. ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2011.

2. The claimant has not engaged in substantial gainful activity since August 15, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: bipolar disorder, anxiety disorder, personality disorder and history of substance abuse (20 CFR 404.1521 *et seq.* And 416.921 *et seq.*).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he has limited (i.e., mild) but satisfactory ability to relate to co-workers; maintain attention/concentration; understand, remember, and carry out detailed instructions; relate predictably in social situations; respond appropriately to changes in the work setting; work close to others without undue distraction; complete a normal workweek; accept instructions/criticism appropriately; and set realistic goals. He is also precluded from jobs where [he is] required to deal with the public.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on May 15, 1976 and was 30 years old, which is defined as [a younger person], on the alleged disability onset date (20 CRF 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in

      English (20 CFR 404.1564 and 416.964)

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 15, 2006 through the date of this decision. (20 CFR 404.1520(g) and 416.920 (g)).

[Tr. 12-18].

## II.    DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI if he has financial need and he is aged, blind, or under a disability. See 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). An individual shall be determined to be under a disability only if his physical and/or mental impairments are of such severity that he is not only unable to do his previous work, but also cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

3

Disability is evaluated pursuant to a five-step analysis summarized as follows:

>1. If claimant is doing substantial gainful activity, he is not disabled.
>
>2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
>3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
>4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
>5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

Plaintiff bears the burden of proof at the first four steps. Id. The burden of proof shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III. STANDARD OF REVIEW

In reviewing the Commissioner's determination of whether an individual is disabled, the Court is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence in the record to support the ALJ's findings. Longworth v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004). If the ALJ's findings are supported by substantial evidence

based upon the record as a whole, they are conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 534 (6th Cir. 2001) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). On review, the Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y of Health & Human Serv., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV. ANALYSIS

The Plaintiff argues that the ALJ erred by not giving good reasons for not giving controlling weight to the opinions of Dr. Hussaini, by not explaining the weight given to the opinions of Dr. Hussaini, and by not considering the Plaintiff's drug use and mental state excused the Plaintiff's failure to follow prescribed treatment. [Doc. 13]. The Defendant argues that the ALJ properly evaluated and weighed the medical source opinions and properly evaluated the Plaintiff's failure to follow prescribed treatment. [Doc. 15].

### A. Applicable Law

Pursuant to the applicable statutory provisions, a treating physician's opinion as to the nature and severity of an impairment must be given controlling weight, if it is well-supported by medically

5

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R.§§ 404.1527(d)(2) and 416.927(d)(2). But where an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R.§§ 404.1527(d)(2) and 416.927(d)(2).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996). Nonetheless, the ultimate decision of disability rests with the ALJ. King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).

**B. Application of Law to the Issues Before the Court**

In this case, the Commissioner does not dispute that Amir A. Hussaini, M.D., was a treating physician. Thus, the Court must determine, first, whether the ALJ's decision not to afford Dr. Hussaini's opinions controlling weight was supported by substantial evidence, and second, whether the ALJ gave "good reasons" for his decision not to afford the opinions weight.

### 1. The Weight Afforded to Dr. Hussaini's Opinion

As previously stated, a treating physician's opinion will be afforded controlling weight, if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R.§§ 404.1527(d)(2) and 416.927(d)(2). In this case the ALJ found that Dr. Hussaini's February 2007 Assessment of Mental Health questionnaire ("questionnaire") was entitled to "little weight" because it was "inconsistent with other significant evidence, including [Dr. Hussaini's] own treatment notes, and with the findings of the consultative psychological examiners." [Tr. 16].

In regard to the February 2007 questionnaire, Dr. Hussaini did not provide any objective findings to support his opinion. [Tr. 243]. Dr. Hussaini indicated his responses to the February 2007 questionnaire by marking an "X" beside most questions. For example, Dr. Hussaini indicated that the Plaintiff's ability to "perform activities of daily living independently and appropriately, free of supervision or direction" was "fair" by marking an "X." [Tr. 242]. In the same manner, Dr. Hussaini indicated that the Plaintiff's ability was "poor" in the areas of social functioning; concentration, persistence, and pace; dealing with stress; dealing with the public; maintaining personal appearance; demonstrating reliability; and completing timely tasks in a work setting. [Tr. 242-43]. Notably, Dr. Hussaini's assessment was incomplete regarding the Plaintiff's ability to work because he deferred his opinion on whether the Plaintiff was able to "follow work rules," "to relate to supervisors and co-workers," and "work at a consistent pace for acceptable periods of time." [Tr. 242-43]. The questionnaire provided an opportunity for Dr. Hussaini to discuss the medical/clinical findings that supported his opinion, yet Dr. Hussaini failed to provide any explanation. [Tr. 243].

An "X" indicating that the Plaintiff is specifically limited in certain areas does not constitute

7

a well-supported opinion, as it provides no support for the opinion. No examinations or other objective medical evidence were cited as support for Dr. Hussaini's opinion. The absence of clinical evidence is supported by the fact that when Dr. Hussaini was given the opportunity explain the medical/clinical basis for his restrictive opinion of the Plaintiff's mental capabilities, he failed to do so. [Tr. 243]. Without references to supporting evidence or the rationale behind such restrictions, it is difficult to determine whether the opinion is well-supported by clinical and laboratory diagnostic techniques, and thus, the weight an ALJ should afford such an opinion. Accordingly, Dr. Hussaini's opinion was not supported by any objective medical data, such as psychological or psychiatric tests, and not entitled to controlling weight. Young v. Secretary of Health & Human Servs., 925 F.2d 146, 151 (6th Cir. 1990).

In addition, there is substantial evidence to support the ALJ's determination that Dr. Hussaini's February 2007 questionnaire was "inconsistent" with his own treatment notes and the consultative examiners of record. [Tr. 16]. With regard to Dr. Hussaini's treatment notes, in November 2006, the Plaintiff reported that he was admitted to St. Mary's Hospital because of an "overdose of Seroquel and cocaine and marijuana . . . from there he was taken to jail for a grand trespassing charge." [Tr. 183]. After not using medication for a month, the Plaintiff indicated that he was willing to go back on Seroquel, because without the medication, "he gets angry and irritable." [Tr. 183]. Despite these recent events, Dr. Hussaini reported that the Plaintiff was "alert and oriented," his "mood was okay," his "thoughts [were] coherent," and he denied "suicidal or homicidal though, intention, or plan . . . [and] hallucinations." [Tr. 183]. In July 2007, the Plaintiff reported to Dr. Hussaini that his "mood was okay," he was "sleeping better," and he was taking his "medicine regularly." [Tr. 284]. Once again, Dr. Hussaini opined that the Plaintiff was alert and

oriented, his speech was regular, his thoughts were coherent, and he denied hurting himself or others. [Tr. 284]. Further, in February 2008, the Plaintiff reported to Dr. Hussaini that he was taking his medicine regularly, he was spending time with his children and that made him "happy," and his mood was "improving." [Tr. 278].

Accordingly, the Court finds that there is substantial evidence that supports the ALJ's determination that Dr. Hussaini's mental assessment was not consistent with his own treatment notes.

The ALJ also determined that Dr. Hussaini's mental assessment of the Plaintiff's limitations was inconsistent with the consultative examiners of record. Brian D. Humphreys, Psy.D., opined that the Plaintiff was not significantly limited in his ability to understand; at most mildly limited in remembering and adapting; mildly to moderately limited in concentration and persistence; and at least moderately limited in his ability to interact appropriately with others. [Tr. 256-57]. Dr. Humphreys concluded that, while the Plaintiff was limited due to his mood and personality disorders, the Plaintiff managed to work in masonry for a year before losing his job due to truancy, rather than due to conflicts with co-workers.[1] [Tr. 257]. Dr. Humphreys did not indicate that the Plaintiff was "usually precluded" in the areas noted by Dr. Hussaini, and only noted mild to moderate restrictions in those areas. At no point in his evaluation did Dr. Humphreys opine that the Plaintiff suffered such a severe mental impairment that it precluded him from working.

---

[1]The Court notes that Dr. Humphreys's report references the last job held by the Plaintiff. The Plaintiff testified at the hearing that he left his last job because he "couldn't concentrate long enough" and "got aggravated real easy." [Tr. 24]. This is contradictory to the statement the Plaintiff made to Dr. Humphreys. Similarly, the Plaintiff reported to Alice Garland, M.S., that he was fired for missing too many days of work, mainly due to court dates, rather than an inability to concentrate or act appropriately with co-workers. [Tr. 203].

In addition, George D. Livingston, Ph.D., reviewed the Plaintiff's medical records and opined that the mental limitations indicated by various sources were generally consistent, but the assessment by Dr. Hussaini suggested greater limitations than indicated by the Plaintiff's activities and Dr. Humphreys's consultative examination. [Tr. 271]. In his Mental Residual Functional Capacity Assessment, Dr. Livingston found that the Plaintiff could perform simple and lower level detailed tasks with normal supervision and needed a solitary or very small group work setting, with tasks that dealt with objects rather than people. [Tr. 275]. Further, Dr. Livingston opined that while the Plaintiff may become irritable when receiving supervisory feedback, "this should be manageable for simple, routinized tasks." [Tr. 275]. Dr. Livingston noted that the Plaintiff's ability to adapt was adequate for such tasks. [Tr. 275].

While the Plaintiff argues that the ALJ improperly rejected the opinion of Alice Garland, M.S., there is substantial evidence in the record for rejecting the latter portion of Ms. Garland's opinion. The ALJ noted that the Ms. Garland opined that the Plaintiff may have moderate to marked limitation in the ability to do complex and detailed work, marked limitations in his ability to persist and concentrate, work with the public and adapt. [Tr. 16; 205-06]. Ms. Garland, however, noted that she relied on the Plaintiff's self-reports and advised the state agency to obtain Dr. Hussaini's records "to determine if the [Plaintiff's] descriptions of his behavior [were] congruent with medical records." [Tr. 205-06]. In January 2007, Andrew J. Phay, Ph.D., conducted a Psychiatric Review Technique. [Tr. 227-40]. He compared the Plaintiff's mental health records with Ms. Garland's consultative findings and felt that the Plaintiff was not credible or cooperateive during his consultative examination. [Tr. 239]. Further, Dr. Phay noted that the Plaintiff did not accurately report his treatment history to Ms. Garland. [Tr. 239]. He concluded that there was insufficient

evidence of any functional limitations. [Tr. 237-39].

Accordingly, the Court finds that there is substantial evidence in the record to support the ALJ's determination that Dr. Hussaini's February 2007 mental assessment was inconsistent with the consultative examiners of record.

    2.    *The ALJ's Explanation of the Weight Afforded Dr. Hussaini's Opinion*

Finally, as noted above the ALJ must give "good reasons" for discounting the opinion of a treating physician. Nonetheless, the Court of Appeals for the Sixth Circuit has held that brief explanations of the reasons for discounting a treating physician may satisfy the "good reasons" requirement. For example, in <u>Allen v. Commissioner of Social Security</u>, 561 F.3d 646 (6th Cir. 2009), the Court of Appeals found that a one sentence explanation of the ALJ's reasoning constituted supplying "good reasons" for the weight afforded to the treating physician's opinions contained in questionnaire responses, <u>id</u>. at 651. The court in <u>Allen</u> explained that while the stated reason was brief it touched upon several of the factors that the ALJ is to consider under 20 C.F.R. § 404.1527(d). <u>Id</u>.

In the present case, the ALJ's discussion of his reasons for discounting Dr. Hussaini's February 2007 questionnaire was not an extremely lengthy discussion, but substantively, it identified and discussed many of the statutory factors, including: the amount of relevant evidence that supports the opinion, § 404.1527(d)(3) and the opinion's consistency with the record as a whole, § 404.1527(d)(4).

The ALJ's discussion of Dr. Hussaini's questionnaire informed the Plaintiff of the ALJ's reasons for discounting Dr. Hussaini opinions and afforded him the notice and substantive guidance

11

contemplated by the statute. The Court finds that the ALJ complied with the procedural requirements contained in 20 C.F.R. § 404.1527(d)(2) by giving "good reasons" for discounting Dr. Hussaini opinion.

## C. The ALJ's Consideration of the Plaintiff's Drug Use and Failure to Follow Prescribed Treatment When Assessing His Credibility

The Plaintiff argues that the ALJ deviated from agency protocol for evaluating his failure to follow treatment as set forth in Social Security Ruling 82-59.[2] [Doc. 13 at 12-13]. The Commissioner contends that the ALJ cited the Plaintiff's non-compliance with his medication regimen in the context of evaluating the credibility of the Plaintiff's complaints. [Doc. 15 at 21-22].

Social Security Regulations require claimants to follow the prescribed treatment of a physician "if this treatment can restore [the claimant's] ability to work." 20 C.F.R. § 404.1530(a). If the claimant fails to follow the treatment plan "without a good reason," then there will not be a finding of disability. 20 C.F.R. § 404.1530(b).

The Social Security Regulation that the Plaintiff relies upon applies to the failure of an individual who has a disabling impairment to follow a prescribed treatment. In pertinent part, SSR 82-59 states:

> "Individuals with a *disabling impairment* which is amendable to treatment that could be expected to restore their ability to work must follow prescribed treatment to be found under a disability, unless there is a justifiable cause for the failure to follow such treatment. This policy statement discusses failure to follow prescribed treatment, explains in detail the requirements necessary for such a finding, explains

---

[2]The Court notes that the Plaintiff cites Social Security Ruling 83-59 [Doc. 13 at 12], however, no such Social Security Ruling exists. The Court infers that the Plaintiff is referring to Social Security Ruling 82-59.

the consequences of such action, and illustrates examples of justifiable causes for "failure."

Soc. Sec. Rul. 82-59, 1982 WL 31384 (emphasis in original).

In this case, the ALJ did not find that the Plaintiff suffered from a disabling impairment. Finding that a claimant suffers from a disabling impairment is necessary to trigger an analysis under SSR 82-59.[3] The Commissioner was not required to analyze the Plaintiff's non-compliance pursuant to SSR 82-59 because he did not find that the Plaintiff was disabled. See Baker v. Astrue, No. 3:09-cv-405, 2010 WL 1818045, *5 (S.D. Ohio April 15, 2010) (holding that "[b]ecause the Commissioner failed to find that Plaintiff was disabled, he was not required to analyze Plaintiff's non-compliance pursuant to SSR 82-59.").

The Plaintiff also argues that the ALJ failed to follow the process set forth in 20 C.F.R. § 404.1535 for assessing whether drug addition is a contributing factor material to a disability determination. [Doc. 13 at 12].

The Plaintiff's reliance upon this regulation is misplaced. 20 C.F.R. § 404.1535 states in relevant part: "If we find *that you are disabled* and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addition or alcoholism is a contributing factor material to the determination of disability." (emphasis added). Therefore, an ALJ must find a plaintiff is under a disability as defined by the regulations before he is required to evaluate whether prior substance abuse is a "material contributing factor." Slusher v. Astrue, No. 08-355-DLB, 2009

---

[3]The Plaintiff testified at the hearing that he was realizing the importance of medications as he aged, and he understood that he has "to stick with it because [he] has to have it." [Tr. 29-30]. The Court notes that if SSR 82-59 were applicable to the instant case, the Plaintiff's testimony indicates that his non-compliance with treatment was driven by youthfulness and lack of insight.

13

WL 2511936, *4 (E.D. K.y. August 17, 2009) (finding that "because the ALJ found Plaintiff not to be under a disability as defined by the regulations, he was not required to evaluate whether Plaintiff's prior substance abuse was a 'material contributing factor.'").

In this case, the ALJ found the Plaintiff was not under a disability as defined by the regulations. Accordingly, the Court finds that the ALJ did not err in evaluating the Plaintiff's claim without discussing the two-part analysis detailed in 20 C.F.R. § 404.1535.

## V. CONCLUSION

For the foregoing reasons, it is hereby **RECOMMENDED**[4] that the Commissioner's Motion for Summary Judgment **[Doc. 14]** be **GRANTED**, and Plaintiff's Motion For Summary Judgment **[Doc. 12]** be **DENIED**.

Respectfully submitted,

s/ H. Bruce Guyton
United States Magistrate Judge

---

[4]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).